UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FRANCISCO CERVANTES, et al., <br> Plaintiffs, <br> v. <br> WEST END 3199 REO LLC, et al., <br> Defendants. | Case No.17-cv-06100-VKD <br><br> **ORDER GRANTING WEST END DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND** <br><br> Re: Dkt. No. 74 |

Plaintiffs Francisco Cervantes and Maria Elena Velazquez-Cervantes sue for alleged violations of California law in connection with their mortgage loan for certain property located in San Jose, California ("Property"). They claim that after they signed a loan modification agreement, defendants fraudulently altered material terms of the document, which ultimately caused them to lose the Property in foreclosure. The First Amended Complaint ("FAC"), the operative pleading, asserts four claims for relief: (1) fraudulent alteration of loan documents; (2) negligence; (3) breach of contract; and (4) wrongful foreclosure. The Court's jurisdiction is based on diversity. 28 U.S.C. § 1332.

Defendants West End 3199 REO LLC, West End Trust 2012-1, LNR Partners, LLC, LNR AFIS Asset Services, LLC, Midland Loan Services, Ana G. Castro and Stacey Barnes (collectively "West End defendants") move to dismiss the FAC for failure to state a claim for relief, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs oppose the motion.

Upon consideration of the moving and responding papers, as well as the oral arguments

presented, the Court grants defendants' motion to dismiss with leave to amend.[1]

## I. BACKGROUND

The following background facts are drawn from the FAC and, for purposes of resolving the present motion, are deemed true:

In August 2007, plaintiffs purchased the Property and borrowed $540,000 from Lehman Brothers Bank ("Lehman") pursuant to a Deed of Trust ("DOT") and Promissory Note ("Note"). The Property is a two-story, four-unit structure. The two upper units are for residential use, and the lower two units are for commercial use. Plaintiffs live in one of the upper units and use one of the lower units for their business. Dkt. No. 65, FAC ¶¶ 6-11.

Around May 5, 2009, Lehman assigned the DOT, along with the Note, to defendant Bayview Loan Services, LLC ("BLS"). *Id*. ¶ 12.

Several years later, on January 14, 2013, BLS recorded an assignment of the DOT and Note to Bayview Fund Acquisitions ("BFA"). The assignment is dated August 3, 2012 with an effective date of July 31, 2012. *Id.* ¶ 14.

BFA assigned the DOT and Note to defendant West End Trust 2012-1 ("West End Trust"). The assignment is dated August 3, 2012 with an effective date of July 31, 2012, and was recorded on or about January 14, 2013. *Id*. ¶ 15.

On August 6, 2014, West End Trust recorded an assignment of the DOT and Note to defendant West End 3199 REO LLC ("West End 3199"). The assignment is dated July 23, 2014. *Id*. ¶ 16.

The FAC identifies BLS and defendant Midland Loan Services ("Midland") as the loan servicers who received and processed plaintiffs' loan payments. *Id*. ¶ 19. Other servicers or

---

[1] Defendants Bayview Loan Servicing, LLC, Bayview Fund Acquisitions, LLC and Julie Butera (collectively, "Bayview defendants") have separately moved to dismiss the FAC. Dkt. No. 74. The Court will issue a separate order on that motion. Plaintiffs have voluntarily dismissed the only other named defendant, First American Title Insurance Co. ("First American"). Dkt. No. 80. All parties who remain in the case have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

2

employees who allegedly had access to the loan documents and relevant information are defendants LNR AFIS Asset Services, LLC ("LNR AFIS"), LNR Partners, LLC ("LNR Partners"), Julie Butera (BLS's Senior Asset Manager), Ana G. Castro (LNR Partners' Asset Manager) and Stacey Barnes (Midland's Loan Servicing Analyst). *Id*. ¶ 20.

In June 2009, after assignment of the DOT and Note to BLS, plaintiffs obtained a loan modification. Ms. Butera allegedly told them that, pursuant to the loan modification terms, paragraph (c), the new interest rate on the loan would be 4% for two years, and after that, "[plaintiffs] will have a 1% increase (as maximum) for the remainder of the term." *Id*. ¶¶ 24-25.

Plaintiffs allege that the executed loan modification agreement "became part of the Note" and contained the following provision regarding the new interest rate:

> (c) New Interest Rate
>
> Effective on 07/01/2009, Borrower's rate of interest will be 4.00% and will adjust to the terms of the original note and the note will control the interest rate for the remainder of the term. The annual increase in the interest rate will be capped at 1% for the remainder of the term.

*Id*. ¶¶ 27, 29. Additionally, the loan modification agreement contained the following provision:

> 6. NO OTHER CHANGES
>
> . . . . Nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the Security Instrument whether such rights or remedies arise herein or by operation of law. Any inserted terms, changes or additions to this Agreement will immediately render it null and void. Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, . . . .

*Id*. ¶ 31. Further, the loan modification agreement provided:

> 8. NO ORAL MODIFICATION
>
> This Agreement may not be amended or modified in any way except by a written instrument executed by all the parties hereto.

*Id*. ¶ 32.

Plaintiffs go on to allege that sometime between June 23, 2009 and October 27, 2014, defendants altered the loan documents without plaintiffs' knowledge. *Id*. ¶¶ 33-34. However, plaintiffs say that the alleged alteration was not revealed until October 27, 2014, by which time

3

they had filed for a second Chapter 13 bankruptcy. Specifically, they say that in that bankruptcy proceeding, defendant Ana Castro (LNR Partner's Asset Manager) submitted a declaration attesting to the new interest rate under the loan modification agreement as follows:

> In June 2009 . . . A true and correct copy of the Modification Agreement is attached hereto as Exhibit "A." Under the of the [sic] Modification Agreement (as described in section 1(c)), the variable interest rate on the loan was reduced to 4% for a two-year period (effective 7/1/09 – 7/1/11). Effective 7/1/11, the interest rate increase[d] to 5%; effective 7/1/12, the interest rate increased to 6%, and effective 7/1/13, the interest rate increased to 7% . . . (with the exception that the highest interest rate would not exceed 8.89%).

*Id.* ¶ 112. Plaintiffs allege that "[t]his entire paragraph has been inserted to the loan documents after we had executed them without our knowledge." *Id.*

Meanwhile, in the period leading up to plaintiffs' discovery of the alleged alteration, plaintiffs missed two mortgage payments, one in December 2010 and another in May 2011. *Id.* ¶ 40. They filed for Chapter 13 bankruptcy in June 2011, and that matter was dismissed in March 2013. Plaintiffs then filed a Chapter 7 bankruptcy petition, which was discharged on October 22, 2013. *Id.* ¶ 41. They claim that no additional payments were missed during those bankruptcy proceedings. *Id.*

Beginning in July or August 2012, while their bankruptcy proceedings were still pending, plaintiffs say that they stopped receiving monthly statements from BLS. After several months passed without receipt of any monthly statements, Mr. Cervantes says that he and his wife repeatedly asked for periodic statements so they could resolve issues regarding their missed payments. However, the FAC alleges that plaintiffs received little or no helpful information in response to their requests. *Id.* ¶¶ 42-46.

In March 2013, plaintiffs received a statement showing that the total past due amount on their loan, including interest, escrow payments and late fees, was $24,666.96. The statement also provided a website where plaintiffs could access information about their loan. Mr. Cervantes registered on the website, but was unable to access information about their mortgage. According to an email he received from defendant Barnes (defendant Midland's Loan Service Analyst), plaintiffs' mortgage information could not be accessed on the website because their loan was

4

"flagged as Special Serviced." *Id*. ¶¶ 48-54.

Mr. Cervantes says that when he asked what they could do to bring their loan current, he was referred to Ms. Castro. *Id*. ¶ 55. Plaintiffs kept calling Ms. Castro for possible solutions to their situation, but were "not aware of the fraudulent alteration of the loan documents at this point." *Id*. ¶ 56. Plaintiffs allege that although they had some communications with Ms. Castro, she failed to make a good faith effort to inform them of foreclosure prevention alternatives. *Id*. ¶¶ 57-60.

In July 2013, plaintiffs received a letter advising that a notice of default was to be recorded. *Id*. ¶ 57. Plaintiffs say that they otherwise continued to make their regular payments as scheduled, and that "Defendant kept receiving the benefits of the forged note. Note that we did not execute, and we did not knew [sic] of the fraudulent alteration." *Id*. ¶ 58.

Some eight months later, on March 6, 2014, plaintiffs received notice that their insurance was about to expire. Mr. Cervantes says he contacted Ms. Castro, who told him that she would contact the insurance company directly. *Id*. ¶¶ 59-60. At that time, Mr. Cervantes says that neither he nor his wife were aware that a notice of default had been recorded. *Id*. ¶ 60.

Several days later, on March 10, 2014, Mr. Cervantes spoke by phone with Ms. Castro, who told him that they (i.e., plaintiffs) were six months late on their payments. Mr. Cervantes insisted that they had only missed payments for two months. *Id*. ¶¶ 61-62.

The next day, March 11, 2014, Mr. Cervantes received a letter, dated February 12, 2014, regarding a Notice of Application of Partial Payment. Then, on March 13, 2014, he received mail advising that the Property was scheduled for a short sale pursuant to the Notice of Default. He called Ms. Castro "to find out what was going on," but she did not answer her phone. *Id*. ¶¶ 63-64. After doing a public records search, Mr. Cervantes learned that a notice of default had been recorded on March 6, 2014. *Id*. ¶ 65.

That same day, March 13, 2014, Mr. Cervantes sent an email to Ms. Castro, reiterating that plaintiffs wanted to resolve the issues with their past due payments and complaining about the lack of help they received from Ms. Castro and her organization. *Id*. ¶¶ 67-70. Ms. Castro sent a reply email, "just to reflect that she had sent a letter agreement in August of 2013." *Id*. ¶ 71. Based on

the FedEx tracking number in Ms. Castro's email, Mr. Cervantes says he discovered that her letter was sent to his old address in Gilroy. *Id*.

On March 25, 2014, Mr. Cervantes received a statement advising that, to bring their mortgage current, plaintiffs would have to pay $127,264.81. Plaintiffs claim that this amount is incorrect and is based on the alleged fraudulent alteration of their loan documents. *Id*. ¶ 72. According to plaintiffs, the amount they owe for the two missed payments is $17,528.97. *Id*. ¶ 78. They believe that the only explanation for the large discrepancy between the parties' respective calculations of the past due amounts is the alleged fraudulently altered provision regarding the new interest rate in their 2009 loan modification agreement.

In the following months, plaintiffs say that they continued to try to work out a solution and expressed their intent to bring their account current, to no avail. On June 2, 2014, plaintiffs offered to make "a $25,000 one-time payment and $6,500 monthly payments until [they] get caught up in order to avoid the foreclosure." *Id*. ¶ 84. In a June 6, 2014 letter, Ms. Castro told plaintiffs that for the past two and a half years, they had been making short payments. Plaintiffs insisted that they were never advised that their payments were short until the notice of default was recorded in March 2014. Plaintiffs claim that they were not given meaningful assistance and that Ms. Castro continued to send mail to their old address in Gilroy. *Id*. ¶¶ 79-105.

On July 8, 2014, Ms. Castro advised that the lender was proceeding with a non-judicial foreclosure. *Id*. ¶ 105. A notice of sale was recorded on July 30, 2014. *Id*. ¶ 107.

On September 29, 2014, plaintiffs filed another petition for Chapter 13 bankruptcy. *Id*. ¶ 108. As discussed above, it was during this proceeding that they say the alleged fraudulently altered terms of their loan documents came to light in a declaration Ms. Castro filed with the bankruptcy court. However, plaintiffs claim they did not realize until later that the terms recited in Ms. Castro's declaration were different than what plaintiffs contend are the actual loan modification terms. *Id*. ¶¶ 110-112.

The Property was sold at a February 3, 2015 foreclosure sale to Donton Construction, Inc. ("Donton"). Plaintiffs are now renting the Property from Donton. *Id*. ¶¶ 121-122.

Mr. Cervantes says that it was not until sometime in April or early May 2015, as he

reviewed his loan documents, that he realized the terms recited in Ms. Castro's declaration were different than those that appeared in his records and that Ms. Castro had submitted false and altered loan documents to the bankruptcy court. Further, he says that various proofs of claim filed in the bankruptcy proceeding demonstrate that Ms. Castro's declaration regarding the loan's new interest rate was false. *Id*. ¶¶ 115-119, 124-129.

Plaintiffs filed the present lawsuit on October 25, 2017, asserting three claims for relief: (1) "Homeowners Bill of Rights Violations"; (2) "Mortgage Servicing Rules Under the Dodd-Frank Act Violations"; and (3) "Fraud by Altering Loan Documents." The Bayview defendants and the West End defendants moved to dismiss pursuant to Rule 12(b)(6) for failure to state a claim for relief. In response to those motions, plaintiffs filed their FAC, which as noted, assert the following four claims for relief: (1) fraudulent alteration of loan documents, (2) negligence, (3) breach of contract, and (4) wrongful foreclosure. All claims stem from the alleged fraudulent alteration of plaintiffs' loan documents.

The Bayview defendants contend that the FAC still fails to state a claim for relief and must be dismissed pursuant to Rule 12(b)(6).[2] For the reasons discussed below, the Court grants defendants' motion to dismiss with leave to amend.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.*

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover,

---

[2] Defendants also originally moved to dismiss this action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), arguing that defendant First American destroyed the Court's diversity jurisdiction. Defendants have since withdrawn that portion of their motion, in view of plaintiffs' voluntary dismissal of First American.

7

1 "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.

Documents appended to or incorporated into the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

### III. DISCUSSION

#### A. Requests for Judicial Notice

Both sides have submitted documents for which they request judicial notice. Noting the alleged alteration of their loan modification agreement, plaintiffs object to defendants' documents on the grounds that they are incomplete and that their contents are disputed. Mr. Cervantes also filed a declaration appending several exhibits in support of plaintiffs' opposition papers. In resolving the present motion, the Court cannot properly consider Mr. Cervantes' declaration and exhibits, which are matters outside the pleadings. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). In any event, the Court finds it unnecessary to consider the documents submitted by the parties. Even accepting all of plaintiffs' allegations as true, and viewing those allegations in a light most favorable to plaintiffs, the FAC does not allege sufficient facts to support a plausible claim for relief.

8

### B. Claim 1: Fraudulent Alteration of Loan Documents

Plaintiffs claim that the defendants fraudulently altered their loan modification agreement. Citing to the Uniform Commercial Code ("UCC") § 3-407,[3] they claim that the alleged fraudulent alteration voided the Note and extinguished their obligations under the loan agreement. The parties agree that this claim is one for fraud.

To state a claim for fraud under California law, a plaintiff must allege: (1) a misrepresentation (false representation, concealment, or non-disclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage. *Lazar v. Super. Ct.*, 12 Cal.4th 631, 638 (1996). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* "A pleading is sufficient under [R]ule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotations and citation omitted).

The West End defendants contend that the FAC, which indicates that the alleged alteration occurred sometime in a five-year period by unidentified person(s), does not allege sufficiently specific facts to support a claim for fraud. Given the nature of plaintiffs' fraud claim and their allegations as to their discovery of the purported fraud, it appears that not all facts concerning the

---

[3] Section 3-407(a) defines an "alteration" as "(i) an unauthorized change in an instrument that purports to modify in any respect the obligation of a party, or (ii) an unauthorized addition of words or numbers or other change to an incomplete instrument relating to the obligation of a party." UCC § 3-407(a). Section 3-407(b) goes on to provide that "an alteration fraudulently made discharges a party whose obligation is affected by the alteration unless that party assents or is precluded from asserting the alteration."

circumstances of the alleged fraud are available to them at this stage of the litigation. Nevertheless, the FAC does not allege facts indicating what role, if any, the West End defendants played in the purported fraudulent alteration of the loan modification agreement. And in their opposition papers, plaintiffs say that defendant BLS altered the modification agreement and that the Bayview defendants concealed the alteration from plaintiffs and from "good faith successors," the West End defendants. Dkt. No. 83 at 5:4-5, 6:17-18.

Moreover, even accepting plaintiffs' allegations as true and construing them in a light most favorable to plaintiffs, the West End defendants argue that the FAC's allegations suggest that plaintiffs' interest rate would have been higher under what plaintiffs claim are the "true" loan terms. As alleged in the FAC, plaintiffs say that effective July 1, 2009, their rate of interest was 4.00% and "will adjust to the terms of the original note and the note will control the interest rate for the remainder of the term." Dkt. No. 65 ¶ 29. According to defendants, the original Note provides for quarterly interest rate adjustments using the London Interbank Offered Rate ("LIBOR"), plus a margin of five percentage points. Dkt. No. 97 at ECF p. 7.

At oral argument, plaintiffs did not seem to dispute that the original Note calls for the use of LIBOR, plus a margin of five percentage points. However, for the first time at the motion hearing, plaintiffs proffered a different interpretation of their favored version of the loan modification agreement. Briefly stated, plaintiffs' newly offered theory seems to be based on the premise that their modified interest rate would start at 4%, and then would increase on a quarterly basis according to whatever the LIBOR index was at that time, *but* there would be *no* added margin. Plaintiffs contend that if the interest on their mortgage payments properly were calculated in this way, they were approximately $26,000 behind on their mortgage, and not the hundreds of thousands of dollars claimed by the defendants.

Plaintiffs' newly offered interpretation, which is not clearly reflected in the FAC's allegations, is not properly before the Court on the present motion. Moreover, the Court harbors some doubt whether that theory is a viable basis for a plausible claim for relief. For example, at the hearing plaintiffs seemed to suggest that their loan modification payments would not change, even though they acknowledge that their loan was an adjustable rate mortgage and that the interest

10

rate on their monthly payments would continue to increase. Nevertheless, because the bases for plaintiffs' newly offered theory are not clear, the Court cannot say with certainty that amendment would be futile. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (noting that dismissal without leave to amend is appropriate only if it is clear that the complaint cannot be saved by amendment). Defendants' motion to dismiss the fraud claim therefore is granted, with leave to amend to allow plaintiffs to plead their new theory as to how their monthly payments should have been calculated under the loan modification agreement. To the extent plaintiffs can allege additional facts about the circumstances of the alleged fraud, the Court grants them leave to amend to allege such facts. However, with respect to the West End defendants, leave to amend the fraud claim is granted only insofar as plaintiffs believe they can truthfully assert facts demonstrating those defendants' role in or connection to the alleged fraud.

Insofar as plaintiffs' remaining claims for relief all stem from the alleged fraudulent alteration of their loan modification agreement, those other claims also fail. However, for the reasons discussed below, there are additional reasons why those claims must be dismissed.

### C. Claim 2: Negligence

"Negligence claims require the following elements: (1) a legal duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; (3) causation; and (4) injury to the plaintiff resulting from the breach." *Geismar v. Ocwen Loan Servicing LLC*, No. 17-cv-02703-JSC, 2018 WL 276813, at *4 (N.D. Cal., Jan. 3, 2018) (citing *Merrill v. Navegar, Inc.*, 26 Cal.4th 465, 500 (2001)).

With respect to the Bayview defendants, plaintiffs allege that defendant BLS negligently "allowed the wrongful fabrication of a new unlawful negotiable instrument" and then attempted to conceal the alteration for the purpose of defrauding the plaintiffs. Dkt. No. 65 ¶ 162-164. As for the West End defendants, the FAC goes on to allege that defendants West End 3199 REO LLC, West End Trust 2012-1 and LNR Partners "executed the power of sale contained in the DOT without having any rights to do it and they knew it or should have known." *Id.* ¶ 169. Although defendants LNR AFIS, Midland and Ms. Castro are also named in this claim, there are no facts alleged about what they did (if anything) that constitutes negligence. These allegations are

11

insufficient to state a plausible claim for relief against the West End defendants. Indeed, as noted above, plaintiffs' opposition now seems to indicate that the alleged fraudulent alteration was also concealed from the West End defendants.

Moreover, defendants argue that they owe no duty of care to plaintiffs. "'[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.'" *Maomanivong v. Nat'l City Mortgage Co.*, No. C13-05433 DMR, 2015 WL 217347, at *7 (N.D. Cal., Jan. 15, 2015) (quoting *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal.App.3d 1089, 1096 (1991)). "Liability to a borrower for negligence arises only under special circumstances, such as 'when the lender actively participates in the financed enterprise beyond the domain of the usual money lender.'" *Id.* (quoting *Nymark*, 231 Cal.App.3d at 1096). Although "California Courts are split on whether a loan servicer owes a duty of care to handle loans in such a way to prevent foreclosure and forfeiture of property," several federal district courts, including within this district agree that loan modification activities fall within the scope of a lending institution's conventional role as a lender of money. *Taylor v. Bosco Credit, LLC*, No. 18-cv-06310-JSC, 2018 WL 6511150, at *3 (N.D. Cal., Dec. 11, 2018) (citing cases). The parties have not addressed whether the alleged alteration of plaintiffs' loan modification agreement constitutes a special circumstance giving rise to a duty of care. But, for the reasons discussed above, the FAC fails to allege sufficient facts demonstrating that the West End defendants had anything to do with the alleged alteration. Accordingly, defendants' motion to dismiss this claim is granted. As with the fraud claim, leave to amend the negligence claim is granted with respect to the West End defendants to the extent plaintiffs believe they can truthfully assert facts demonstrating a plausible basis for liability.

### D. Claim 3: Breach of Contract

To state a claim for breach of contract, plaintiffs must show (1) the existence of a contract with defendants, (2) plaintiffs' performance or excuse for nonperformance, (3) defendants' breach, and (4) resulting damages to plaintiffs. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

12

Plaintiffs claim that by altering their loan modification agreement, defendants breached that agreement's "No Other Changes" clause, which provides:

> 6. NO OTHER CHANGES
>
> . . . . Nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the Security Instrument whether such rights or remedies arise herein or by operation of law. ***Any inserted terms, changes or additions to this Agreement will immediately render it null and void***. Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, . . . .

*Id.* ¶ 31 (emphasis added). Relying on the highlighted text in this clause, plaintiffs further claim that the alleged alteration of the modification agreement voided the Note and excused them from performing their obligations under the loan. However, the highlighted text plainly states that an alteration to the loan modification agreement renders *the modification agreement* null and void, not the Note or plaintiffs' payment obligations. Moreover, defendants LNR Partners, LNR AFIS, Midland, Ms. Castro and Ms. Barnes say that they are not a party or a successor to a party to any contract with plaintiffs. If true, then a claim for breach of contract cannot be stated as to those defendants.

Defendants' motion to dismiss this claim is granted, with leave to amend.

### E. Claim 4: Wrongful Foreclosure

"After a nonjudicial foreclosure sale has been completed, the traditional method by which the sale is challenged is a suit in equity to set aside the trustee's sale." *Lona v. Citibank, N.A.*, 202 Cal. App.4th 89, 103 (2011). In order to successfully state a claim for wrongful foreclosure, plaintiffs must plead that (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) plaintiffs were prejudiced or harmed; and (3) they tendered the amount of the secured indebtedness or were excused from tendering. *Id.* "Because the action is in equity, a defaulted borrower who seeks to set aside a trustee's sale is required to do equity before the court will exercise its equitable powers." *Id.* at 112. "Consequently, as a condition precedent to an action by the borrower to set aside the trustee's sale on the ground that the sale is voidable because of irregularities in the sale notice or procedure, the borrower must offer to pay the full amount of the

debt for which the property was security." *Id*. "The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower]." *Id*. (citation omitted; alteration in original). There are, however, several exceptions to the tender rule:

> First, if the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt. . .. Second, a tender will not be required when the person who seeks to set aside the trustee's sale has a counterclaim or setoff against the beneficiary. . .. Third, a tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale. . .. Fourth, no tender will be required when the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face.

*Id*. at 112-13.

Defendants argue that this claim fails because plaintiffs failed to tender the outstanding debt. As discussed, however, the amount of plaintiffs' indebtedness is a key contested issue, and it seems that the first exception to the tender rule may apply. Accordingly, the Court declines to dismiss this claim on that basis.

Defendants nevertheless contend that the wrongful foreclosure claim is based on a misapplication of the Uniform Commercial Code. Here, they argue that the FAC alleges, in conclusory fashion, that the loan modification agreement is a negotiable instrument. Defendants maintain that the Note is a negotiable instrument, but that the loan modification agreement, which modified plaintiffs' payment obligations under the Note, is not a negotiable instrument.

For present purposes, the Court concludes that it is unnecessary to determine whether the loan modification agreement is a negotiable instrument under California law. Suffice to say that plaintiffs base their wrongful foreclosure claim on the theory that, pursuant to provisions of Article 3 of the Uniform Commercial Code ("UCC"), the alleged alteration of the modification agreement discharged their loan obligations, and defendants therefore had no right to proceed with foreclosure on the property. Dkt. No. 65 ¶¶ 182-197. As discussed, the premise that the alleged alteration voided the Note and extinguished plaintiffs' payment obligations is not supported by the FAC's allegations. Moreover, "[a]lthough Article 3 of the UCC governs negotiable instruments, it does not apply to nonjudicial foreclosure under deeds of trust." *Padayachi v. IndyMac Bank*, No.

1  C09-5545 JF (PVT), 2010 WL 4367221, at *3 (N.D. Cal., Oct. 28, 2010). *See also Caovilla v.*

2  *Wells Fargo Bank, N.A.*, No. 13-cv-1003 JSC, 2013 WL 2153855, at *4 (N.D. Cal., May 16,

3  2013) (same).

4  Defendants' motion to dismiss this claim is granted with leave to amend.

## IV. CONCLUSION

Based on the foregoing, defendants' motion to dismiss the FAC is granted, but plaintiffs are given leave to amend each of their claims to the extent they believe that they can truthfully assert timely, plausible claims for relief. If they choose to amend, plaintiffs' amended pleading should be titled "Second Amended Complaint." The Second Amended Complaint must be filed no later than **January 31, 2019**.

Plaintiffs are encouraged to contact the Federal Pro Se Program for assistance. The Pro Se Program is located on the Second Floor of the Federal Courthouse in San Jose. Help is provided by appointment and on a drop-in basis Monday to Thursday, 9:00 a.m. to 4:00 p.m. The Program will be open on December 31, 2018 and January 2, 2019, but will be closed December 24-28, 2018, January 1, 2019, and January 3-4, 2019. Appointments may be made by signing up in person at the Program's office (Room 2070) at the San Jose Federal Courthouse, or by calling 408-297-1480. To the extent they have not already done so, plaintiffs are also highly encouraged to obtain a copy of the Court's Handbook for Pro Se Litigants, available on the Court's website (https://www.cand.uscourts.gov/prosehandbook) or from the Clerk's Office.

**IT IS SO ORDERED.**

Dated: December 21, 2018

VIRGINIA K. DEMARCHI
United States Magistrate Judge

15